IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JANE DOE,

     Plaintiff,

v.

GRAMBLING T. DOMINIQUE, JR.,
aka ERNEST EUGENE SLADE,
et al.,

     Defendants.

CIVIL ACTION FILE
NO. 1:13-CV-04270-HLM

## ORDER

This case is before the Court on Defendants' Motion to Quash Plaintiff's Subpoenas ("Motion to Quash") [11], Plaintiff's Request for an Order Compelling Production ("Motion to Compel") [16], Plaintiff's Motion for Service of Process ("Motion for Service") [17], and on Defendant

AO 72A

Margaret Pickard ("Pickard") and Defendant Truth in Posting, LLC's ("Truth in Posting") Motion to Dismiss for Lack of Personal Jurisdiction [19].

## I.   Background

### A.   Procedural Background

On December 26, 2013, Plaintiff filed this lawsuit. (Docket Entry No. 1.) The lawsuit arose out of Defendant Dominique's alleged posting of defamatory statements about Plaintiff on the internet website "Reportyourex.com." (Compl. (Docket Entry No. 1) ¶¶ 3, 6.) Defendants John Doe d/b/a Reportyourex.com ("Report Your Ex"), John Doe d/b/a Removenames.com ("Remove Names"), John Doe d/b/a Removemyname.com ("Remove My Name"), John Doe d/b/a Removeaposting.com ("Remove a Posting"), and

2

AO 72A

Truth in Posting (collectively, the "Website Defendants")[1] then allegedly "conspired to extort money from Plaintiff when they required Plaintiff to pay up to $699.00 for the removal of allegedly defamatory statements from the website Reportyourex.com." (Id. ¶¶ 9, 11.)

Plaintiff asserted the following claims arising out of these actions: (1) defamation (Compl. ¶¶ 41-45); (2) libel per se (id. ¶¶ 46-51); (3) publicity that places another in a false light (id. ¶¶ 52-60); (4) intentional infliction of emotional distress (id. ¶¶ 61-65); (5) conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") (id. ¶¶ 66-74); (6) RICO damages (id. ¶¶ 75-86);

---

[1]Plaintiff alleges that Defendant Pickard is the registered agent of Defendant Truth in Posting, which appears to be her only relation to the Instant Action. (Compl. ¶ 14.)

3

AO 72A

and (7) punitive damages (id. ¶¶ 87-91). On February 25, 2014, Plaintiff amended her Complaint to add counts of "Public Disclosure of Private Facts" (Am. Compl. (Docket Entry No. 14) ¶¶ 81-86) and violation of the Georgia Fair Business Practices Act ("GFBPA") (id. ¶¶ 92-95). Further, the Amended Complaint adds Domains by Proxy, LLC ("Domains by Proxy") as a Defendant, and adds more detail to the accusations contained in the initial Complaint. (See generally id.)

Along with her Complaint, Plaintiff filed her Motion for TRO (Docket Entry No. 2), Motion to Expedite (Docket Entry No. 3), and Motion to Seal (Docket Entry No. 4). The Court denied Plaintiff's Motion for TRO, granted in part the Motion to Expedite, and sealed the instant case. (See Order of Jan.

4

AO 72A

3, 2014 (Docket Entry No. 5) at 29-30; Order of Jan. 6, 2014 (Docket Entry No. 6) at 2.)

As part of the Court's partial grant of Plaintiff's Motion to Expedite, the Court permitted Plaintiff to pursue limited discovery of third parties in order to ascertain Defendants' identities. (Order of Jan. 3, 2014 at 29.) Plaintiff is now attempting to obtain this discovery through two subpoenas served on Domains by Proxy, LLC, seeking the identity of the registered owners of the domains REPORTYOUREX.COM, REMOVENAMES.COM, REMOVEMYNAME.COM, REMOVEAPOSTING.COM, and TRUTHINPOSTING.COM (the "February 5, 2014 Subpoenas").[2] (Docket Entry No. 11 at Ex. A.) The Website

_____

[2]Plaintiff previously served a similar subpoena on January 13, 2014 (Docket Entry No. 9-1 at Ex. A), but Plaintiff withdrew this

5

Defendants[3] filed a Motion to Quash the February 5, 2014,
subpoenas, arguing that the requested subpoenas violate
their constitutional right to speak anonymously. (See
generally Mot. Quash (Docket Entry No. 11).) Plaintiff filed
her Response to the Motion to Quash[4] on February 25,
2014 (Docket Entry Nos. 15), and Defendants have now

---

subpoena when informed that it was not in compliance with Federal
Rule of Civil Procedure 45 (see Order of Feb. 10, 2014 (Docket
Entry No. 10).

[3]The Court notes that Defendant Truth in Posting has not
actually joined in the Motion to Quash. (See Mot. Quash at 1.)
However, there is no indication that it objects to the Motion. (See
generally Docket.)

[4]Plaintiff also filed a "Request for an Order Compelling
Production" ("Motion to Compel"). (See Pl.'s Resp. Mot. Quash
(Docket Entry Nos. 16) at 1.) However, the brief filed, and the
issues presented, are identical to Plaintiff's Response to the Motion
to Quash. (See generally id.) Consequently, the Court refers only
to Plaintiff's Response to Defendants' Motion to Quash, and notes
that the ruling on that Motion is determinative of the ruling on
Plaintiff's Motion to Compel.

6

replied (Docket Entry No. 20). Consequently, the Court finds the Motion to Quash ripe for resolution.

On February 25, 2014, Plaintiff filed a Motion for Service. (Docket Entry No. 17.) The time in which responses to the Motion for Service could be filed has expired, and no responses appear on the Docket. (See generally Docket.) Consequently, the Court finds the Motion for Service ripe for resolution.

Finally, on March 3, 2014, Defendants Truth in Posting and Pickard filed a Motion to Dismiss for Lack of Personal Jurisdiction ("Motion to Dismiss"). (Docket Entry No. 19.) Plaintiff responded to that Motion on March 17, 2014 (Docket Entry No. 24), and Defendants Truth in Posting and Pickard replied on March 25, 2014 (Docket Entry No. 26).

7

AO 72A

Consequently, the Court finds that the Motion to Dismiss is also ripe for resolution.

## B.   Plaintiff's Allegations

Plaintiff states that "[t]his matter arises from false, defamatory, malicious, nasty, and tasteless statements about [] Plaintiff created by Defendant [] Dominique [] and promoted and published by Defendant [Report Your Ex] designed to cause and that did cause harm to her reputation in the community, in her profession as a lawyer and to her over-all well-being." (Am. Compl. (Docket Entry No. 14) ¶ 3.) Defendant Dominique's posts falsely portrayed Plaintiff "in an entirely false light portraying her has [sic] victim of domestic violence, as having committed criminal acts involving the criminal court system of which she is a

8

practicing lawyer, as having violated bar ethical rules, amongst other allegations." (Id. ¶¶ 4-5.) The posts were posted online through Defendant Report Your Ex, are accessible by a simple Google search, and were seen by Plaintiff's family members, friends, colleagues, clients, business partners, and others. (Id. ¶ 6.)

### 1.   The Parties

Defendant Dominique's last known address is 4371 Winters Chapel Road, Apartment 1735, Atlanta, Georgia, though his current residence is unknown. (Am. Compl. ¶ 7.)

Defendant Truth in Posting is a limited liability company incorporated in the State of Nevada, and can be served at 10120 S. Eastern Ave., Suite 200, Henderson NV 89052. (Am. Compl. ¶ 8.) Defendant Pickard is the registered agent

9

of Defendant Truth in Posting and may be served at the same address. (Id. ¶ 9.)

Plaintiff believes that Defendant Domains by Proxy became the registrant of the domain <reportyourex.com> on or about January 26, 2010, the domain <removeaposting.com> on or about December 16, 2011, the domain <removenames.com> on or about June 9, 2011, and the domain <removemyname.com> on or about July 31, 2005. (Am. Compl. ¶ 10.) Defendant Domains by Proxy may be served at GO Daddy Operating Company, LLC, 14455 North Hayden Road, Suite 219, Scottsdale, Arizona 85260. (Id.)

10

Plaintiff does not know the true names, legal capacities, or whereabouts of the remaining Defendants. (Am. Compl. ¶ 11.)

Plaintiff, at all times relevant, was a resident of the State of Georgia. (Am. Compl. ¶ 12.) Plaintiff asserts that she is a person of good name and reputation and was is held in high esteem by those who know her. (Id. ¶ 18.) She is a well reputed attorney who relies on her work as an attorney for her livelihood. (Id. ¶¶ 19-21.)

## 2.   The Alleged Facts

Defendant Domains by Proxy is a for profit corporation offering privacy services to domain name registrants. (Am. Compl. ¶ 22.) Defendant Domains by Proxy serves as the owner and registrant of its clients' domain names, making

11

AO 72A

only Defendant Domains by Proxy's contact information available to the public. (Id. ¶ 22.) Plaintiff asserts this practice makes Defendant Domains by Proxy "legally responsible for the domain name," though its customers remain beneficiaries of the domain name. (Id.)

Defendant Dominque posted the statement in question on or about August 28, 2013 (hereinafter the "Disputed Post"). (Am. Compl. ¶ 24.) It stated in part:

> - This dumbass message is in response to the dumbass message website [Plaintiff] wrote about me concerning our brief relationship we had
> - Now I wonder what her fag ass co-workers would say if they found out that she is not only keeping my daughter from me but, due to fraud by telling me she died at birth?
> - An officer of the court is purposely concealing our child from me by lying about her being born [and she says that the child] died at birth and is buried next to her dead father.

12

[S]he is to [sic] worried about what people may say about her in her dumbass in that clown ass state.
- She tries to maintain that she is so about certain people when she talks about her so-called friends like dogs including her White law partner for one, and in fact has dated drug dealers, lawyers who have attempted to kill themselves because they are manic depressive, move in's [sic] unemployed Hispanics who attempted to beat herass [sic] and, with this dude she claim he had her stranded in Florida with a suspended license and stolen car.
- [Plaintiff] likes and dates Thugs.
- [H]er supposed to be adult-ass writing dumb shit on the internet.
- Lying about our baby that she begged me to give her being alive and keeping her from me
- She and I were kick'in it strong for a while after she put out her Mexican boyfriend for beating her ass[.]
- [S]he said she was scared of his punk ass. She told me she needed to pull a gun on him to make him leave her alone.
- [U]sing [the] DEKALB court officials to play hide and seek with my court filings to get my baby bitch.
- I made [her] pussy wet daily. She loved me to fuck her. I fucked the shit out of her when I felt like it cause I thought she was boring.

13

- [K]new all about it. But liked I said broad haten [sic] and I misplaced her trust, lead to us breaking up.

(Id. ¶ 25 & Ex. A (internal quotation marks omitted).) Plaintiff's friends, family, and clients have approached Plaintiff regarding the Disputed Post to make her aware of it, and to inquire if it is true. (Id. ¶¶ 29-30, 33.) Plaintiff is embarrassed and humiliated because of the publication. (Id. ¶ 31.) A blog section where viewers can write responses to the Defamatory Statments is included on the same web page. (Id. ¶ 32.)

Plaintiff asserts that Defendant Report Your Ex "encourages spurned ex-boyfriends, ex-girlfriends and ex-wives and ex-husbands from all over the United States to post derogatory statements about former partners following

14

a break up." (Am. Compl. ¶ 34.) Plaintiff states that such postings are search optimized to appear first on any Google search, ensuring that anyone searching Plaintiff's name for any reason will find the posting in question. (Id. ¶ 35.) Plaintiff sought employment as an attorney during the time the Disputed Post was online, and believes she was unable to find employment due to the Disputed Post. (Id. ¶ 36.)

Defendants Report Your Ex, Remove Names, Remove My Name, and Remove a Posting do not list any contact information on their websites, limiting accessibility to a form that can be submitted through the sites. (Am. Compl. ¶ 37.) Plaintiff conducted corporation searches on the internet and in Nevada, Arizona, and Delaware for these websites but could not locate any contact information. (Id. ¶ 38.) Plaintiff

15

used this form to request that the post in question be removed on at least three separate occasions. (<u>Id.</u> ¶ 39.) Plaintiff also requested that Defendant Dominique remove the post, but the post was not removed. (<u>Id.</u> ¶¶ 40-41.)

Defendant Report Your Ex's "removal page" states:

If you are the victim of a post and don't agree with what has been posted about you, you can make use of the independent third party services below to challenge [the post]. However, this does not mean that the post will be removed. Only upon a successful challenge, the post will be removed if deemed maliciously motivated and unsubstantiated. For more information please visit the sites below: 1) [Defendant Truth in Posting]; 2) [Defendant Remove My Name]; and 3) [Defendant Remove Names].

16

(Am. Compl. ¶ 42 & Ex. B.[5]) This page also contains advertisements for other post removal services, including Defendant Remove a Posting, offering assistance in removing posts for a fee. (Id. ¶ 44.) Plaintiff asserts that while Defendant Report Your Ex claims that these removal services are being provided by independent third parties, all four domain names are registered to Defendant Domains by Proxy, and at least three of the services are represented by the same counsel as Defendant Report Your Ex. (Id. ¶ 45.)

Defendant Report Your Ex's removals page also states:

First, let us address the main issue at hand. We do not remove reports, comments, posts and/or topics. These will not be removed even if the

---

[5]There are some typographical differences between the website excerpts typed into the Complaint and those appearing in attached exhibits. The excerpts reproduced in the Order are based on the Complaint.

AO 72A

statements are claimed to contain defamatory allegations. We will not remove them, even if the original author requests it. We do however work with 3rd Party legal arbitration services.

(Am. Compl. ¶ 46 & Ex. C.)

Defendant Report Your Ex's page entitled "Suing Report Your Ex" states:

Understand that we will not settle out of court without first obtaining a repayment of our legal fees as well as damages. We will not allow you to change your mind in the middle of a lawsuit against us and walk away free and clear. If you choose to disregard the laws that protect us, we will not settle without compensation for our legal fees and damages. Furthermore, if you do not settle the case with us under these guidelines and decide to see it to the end, once we have won the case, we reserve the right to countersue for damages incurred during the case. Also, being that the case will be public record we will also share all allowable information regarding the suit to all major news and media companies. This means that if your goal is to shut us down based on "stress factors," it will not work. We will forward

18

AO 72A

all information to all the news publications and broadcasting companies so that they may expose your extortion efforts to the general public.

(Am. Compl. ¶ 47 & Ex. C.)

Finally, Defendant Report Your Ex's page titled "Questions About Report Your Ex" has the following question and answer post:

Q: Does [Defendant Report Your Ex] profit from removing the posts?
A: No. We do not accept payment from [Defendant] Truth in Posting if their findings indicate the the [sic] Post is defamatory and should be removed from the site, nor do we accept payment from the accused, or other third parties for post removal. Please do not offer us any money to remove any posts, we will not accept it. Posts can only be removed by the original author, pursuant to a court order or the arbitrator's decision.

(Am. Compl. ¶ 48 & Ex. D.)

19

Plaintiff alleges that Defendant Report Your Ex has entered into agreements with Defendants Truth in Posting, Remove Names, Remove a Posting, and Remove my Name (collectively, the "Arbitrator Defendants") wherein Defendant Report Your Ex posts links to the Arbitrator Defendant's websites and recommends their services to assist victims with the removal of derogatory posts for fees ranging from $199.00 to $699.00. (Am. Compl. ¶ 49.) Plaintiff further states that the Website Defendants are all owned by the same people, and "are conspiring and have agreed to commit extortion, and have in fact committed extortion."[6] (Id. ¶ 50.) None of Defendants guarantee that

_____

[6]Plaintiff alleges that "four of the websites" are owned by the same people, but then lists all five websites. (Am. Compl. ¶ 50.) The Court assumes that Plaintiff intended to allege that all five websites are part of the same ownership group.

20

the negative post will be removed upon payment. (Id. ¶ 51.)

Plaintiff states that "upon information and belief, Defendant

[Report Your Ex] does profit from the publishing of

statements on it's [sic] website by getting money directly

from individuals who pay for the removal of posts via [the

Arbitrator Defendants]." (Id. ¶ 52.) Further, "Defendants

have conspired to extort money from Plaintiff when they

required Plaintiff to pay up to $699.00 for the removal of the

defamatory statements [and] [w]hen Plaintiff failed to pay

the Defendants for the removal of this information . . . the

statements continued to be published therein." (Id. ¶ 54.)

Plaintiff alleges that Defendant Report Your Ex

encourages defamatory posts on its website, and

Defendants engage in an extortion scheme by extorting

21

money from injured persons "to have the defamatory comments removed by purported 'legal arbitration.'" (Am. Compl. ¶ 56[7].) Defendants "make money by humiliating victims for a profit." (Id. ¶ 57.) Finally, the publication of the Defamatory Statements in question caused Plaintiff to "experience[] both emotional and financial harm, including injury to her business" and has "had to seek counseling." (Id. ¶ 58.)

## II.  Motion to Quash

Defendants Report Your Ex, Remove Names, Remove My Name, and Remove a Posting filed a Motion to Quash Plaintiff's February 5, 2014, Subpoena on Defendant Domains By Proxy seeking the identity of the registered

---

[7]The Court bases the paragraph numbering on Plaintiff's labeling, which skips from "44" to "46." (See generally Am. Compl.)

22

owners of the Website Defendants.[8] (See generally Mot. Quash (Docket Entry No. 11) & Ex. A.) The Court now addresses that Motion.

## A.  Determining the Relevant Legal Standard

The amount of protection afforded to anonymous internet actors, and the showing required for litigants to pierce that protection by court subpoena, is a murky area of law with no precedent clearly binding this Court. Undoubtedly, constitutional protections do not melt away because an activity takes place in cyberspace as opposed

---

[8]Though neither party raises the issue of the Website Defendants standing to quash a subpoena issued to Defendant Domains by Proxy, the Court finds that they are "seeking to protect a personal privilege or right," and their Motion to Quash is proper. Melder v. State Farm Mut. Auto Ins. Co., Civil Action File No. 1:08-CV-1274-RWS-JFK, 2008 WL 1899569, at *2 (N.D. Ga. Apr. 25, 2008) (internal quotation marks and citation omitted).

23

AO 72A

to the brick and mortar world that its framers inhabited. <u>See</u> <u>Reno v. Am. Civil Liberties Union</u>, 521 U.S. 844, 870 (1997) ("As the District Court found, 'the content on the Internet is as diverse as human thought.' We agree with its conclusion that our cases provide no basis for qualifying the level of First Amendment scrutiny that should be applied to this medium." (internal citation omitted)). Among these constitutional protections is the right to speak anonymously. <u>See</u> <u>McIntyre v. Ohio Elections Com'n</u>, 514 U.S. 334, 342 (1995) ("Accordingly, an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the first amendment . . . [this freedom] extends beyond the literary realm.").

24

However, such constitutional protection is not absolute. Id. at 353 ("We recognize that a State's enforcement interest might justify a more limited identification requirement."). Indeed, the free speech protections afforded users of the internet cannot be used as a carte blanche to violate the law or the right's of others without repercussions. See Whitney v. California, 274 U.S. 357, 371 (1927) ("That the freedom of speech which is secured by the Constitution does not confer an absolute right to speak, without responsibility, whatever one may choose, or an unrestricted and unbridled license giving immunity for every possible use of language and preventing the punishment of those who abuse this freedom . . . is not open to question.").

25

While these general principles remain clear, courts around the country have formulated a variety of different "tests" to determine when civil suit subpoenas may be used to reel in allegedly illegal, anonymous, online speech. <u>See, e.g.</u>, <u>Doe v. 2TheMart.com, Inc.</u>, 140 F. Supp. 2d 1088, 1095 (W.D. Wash. Apr. 26, 2001) (weighing four factors deciding whether a subpoena of an anonymous internet actor should issue); <u>In re Subpoena Duces Tecum to Am. Online, Inc.</u>, No. 40570, 2000 WL 1210372, at *8 (Va. Cir. Ct. Jan. 31, 2000) (requiring plaintiffs to satisfy three part test centered around good faith); <u>Doe v. Cahill</u>, 884 A.2d 451, 461(Del. 2005) (requiring plaintiffs to meet summary judgment standard in order to subpoena an anonymous internet poster); <u>Solers, Inc. v. Doe</u>, 977 A.2d 941, 954

26

AO 72A

(D.C. Ct. App. 2009) (instructing courts to follow five step process in evaluating motions to quash subpoenas of anonymous internet actors). These tests range from requiring plaintiffs to simply demonstrate good faith, <u>see</u> <u>Am. Online, Inc.</u>, 2000 WL 1210372, at *8 (requiring that "the party requesting the subpoena has a legitimate, good faith basis to contend that it may be the victim of conduct actionable in the jurisdiction where suit was filed"), to requiring that plaintiffs satisfy a summary judgment-like burden, <u>see</u> <u>Solers, Inc.</u>, 977 A.2d at 954 ("Procedural labels such as <u>prima facie</u> or 'summary judgment' may prove misleading, but the test we now adopt closely resembles the 'summary judgment' standard articulated in

AO 72A

Cahill" (citing Cahill, 884 A.2d at 457).).[9] The factual circumstances around which these tests have been formulated also vary, with courts indicating that certain types of subpoenas require more scrutiny than others. See, e.g., 2TheMart.Com, Inc., 140 F. Supp. 2d at 1095 ("The standard for disclosing the identity of a non-party witness must be higher than [previously articulated standards for unmasking defendants]." (emphasis in original)). The traditional variances in degree of scrutiny based on the type of speech at issue also apply. See In re Anonymous Online Speakers, 661 F.3d 1168, 1173 (9th Cir. 2011) (noting that

---

[9]The Court notes that the burdens associated with labels such as "summary judgment" or "motion to dismiss" varies significantly from jurisdiction to jurisdiction, and that many of the reported cases addressing subpoenas on anonymous internet actors come from state courts.

AO 72A

"courts afford political speech the highest level of protection," that commercial speech "enjoys a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values," and that "some speech, such as fighting words and obscenity, is not protected by the First Amendment at all" (internal quotation marks and citations omitted)). Indeed, "the nature of the speech should be a driving force in choosing a standard by which to balance the rights of anonymous speakers in discovery disputes." Id. at 1177.

Here, Defendants urge the Court to adopt the standard elucidated by Dendrite Int'l, Inc. v. Doe, 342 N.J. Super. 134, 775 A.2d 756 (2001), in evaluating the instant Motion. (See Mot. Quash at 5, 20-23.) The Dendrite court required

29

the plaintiff, who was seeking the identity of several anonymous internet posters charged with defamation, to demonstrate five elements: (1) that the plaintiff attempted to notify the anonymous defendants, including a posting on the relevant message board; (2) that the plaintiff identified the exact statements in question; (3) that the complaint can withstand a motion to dismiss; (4) that the plaintiff presented evidence sufficient to constitute a prima facie case; and (5) that the balance between the poster's First Amendment rights and the strength of the plaintiff's prima facie case comes out in favor of the plaintiff. 342 N.J. Super. at 141-42, 775 A.2d at 760-61. The Court declines to place such a rigorous burden on Plaintiff under the instant circumstances.

30

Dendrite, and almost every other case which has addressed the showing a plaintiff must make in order to subpoena the identity of an anonymous internet actor, involved a claim either that the unidentified defendant(s) harmed the plaintiff through an anonymous online posting, see, e.g., Dendrite, 342 N.J. Super. at 146, 775 A.2d at 763 (alleging defamation and misappropriation of trade secrets); Columbia Ins. Co. v. SeesCandy.com, 185 F.R.D. 573, 576 (N.D. Cal. 1999) (alleging trademark infringement); In re Anonymous Online Speakers, 661 F.3d at 1172 (involving accusation that defendant carried out an anonymous online "smear campaign" against Plaintiff business), or that a third-party's anonymous speech made uncovering that third-party speaker's identity necessary to prove or defend a claim

31

against an already identified defendant, <u>see, e.g.,</u> <u>2TheMart.com, Inc.</u>, 140 F.Supp. 2d at 1095 (defendant corporation in derivative suit sought identities of online posters as part of its affirmative defense that "illegal actions of individuals who manipulated [the defendant's] stock price using the [] message boards," not the actions of the defendants, caused a drop in stock price). None of these situations is directly applicable to the instant case, and the Court has been unable to find a reported opinion directly addressing the present circumstances.

Here, unlike the cases cited throughout the Parties' briefing, the Court is not asked "to unmask the identity of an anonymous defendant who has posted allegedly defamatory material on the internet." <u>Cahill</u>, 884 A.2d at 457. The author

32

of the online post in question, Defendant Dominque, is already known. Instead, Plaintiff seeks the identity of the registered owners of the forum on which the speech in question occurred, and the owners of online "arbitration services" advertising on that forum whom Plaintiff accuses of conspiring with the forum to illegally extort money from Plaintiff and other similarly situated individuals.

Under these circumstances, the considerations that must be weighed differ from the "traditional" anonymous internet speaker lawsuit. As the Website Defendants quickly point out in their attack on Plaintiff's defamation claims, none of the Website Defendants' "speech" is at the root of their appearance in the instant dispute. Nonetheless, First Amendment concerns do arise, especially with regard to

33

Defendant Report Your Ex. Regardless of Plaintiff's personal thoughts on the nobility of "ReportYourEx.com" and its content, forums supporting anonymous online speech are vital to maintaining the rich marketplace of ideas which the internet has created, and subjecting such forums to ridicule and punishment for the actions of their users would certainly chill free speech. Congress memorialized this sentiment in 47 U.S.C. § 230(c)(1), which provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another content provider." 47 U.S.C. § 230; see also id. §230(b)(1) (stating that "[i]t is the policy of the United States - - to promote the continued

34

development of the Internet and other interactive computer services and other interactive media").

The considerations relevant to protecting the anonymity of the Arbitrator Defendants are less weighty. Their role in promoting free speech is more attenuated than that of Defendant Report Your Ex. Perhaps certain anonymous online speakers are comforted knowing that, should their posts be inaccurate, falsities can be removed for a $199.00 fee. However, the Court doubts such thoughts play into the calculus of most anonymous online posters, and is relatively certain that Defendant Dominique did not weigh the availability of such services when deciding whether to electronically express his feelings about Plaintiff. Nonetheless, the Court agrees that the Arbitrator

AO 72A

Defendants' anonymity is of value to them, and that a Plaintiff must do more than pay a filing fee to strip them of it.

Weighing all these considerations, the Court finds it appropriate to require Plaintiff to survive a Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss standard before unmasking the Website Defendants.[10] While such a standard is not as exacting as the summary judgment standard courts have applied in the context of unmasking

---

[10]The Court would add that Plaintiff should provide "notice [to the anonymous parties] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). However, because Defendants in this case have been notified and presented their objections to the subpoenas in question, the Court need not rule on exactly what form such notice must take.

36

AO 72A

anonymous internet <u>speakers</u>, it nonetheless ensures that Plaintiff cannot exploit the Court's subpoena power to deprive a website of its valuable anonymity for personal reasons alone.[11] Instead, Plaintiff must allege a legally cognizable harm.

Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a complaint, or portions of a complaint, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).    When reviewing a motion to dismiss, the Court must take the allegations of the complaint as true and must construe those allegations in the

---

[11]As Plaintiff herself admits, the Court must "ensure that the subpoena for disclosure of the identities of the owners of the [Defendant] websites has not been issued for the purpose of harassment and that Plaintiff has a legitimate claim." (Pl.'s Resp. Defs.' Mot. Quash (Docket Entry No. 15) at 14.)

37

light most favorable to the plaintiff.  Rivell v. Private Health Care Sys., Inc., 520 F.3d 1308, 1309 (11th Cir. 2008).

Although a court is required to accept well-pleaded facts as true when evaluating a motion to dismiss, it is not required to accept the plaintiff's legal conclusions.  Chandler v. Sec'y of Fla. Dep't of Transp., 695 F.3d 1194, 1199 (11th Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  When evaluating the sufficiency of a plaintiff's complaint, the court makes reasonable inferences in favor of the plaintiff, but is not required to draw the plaintiff's inference.  Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005).  Similarly, the Court does not accept as true "unwarranted deductions of fact or conclusions masquerading as facts."  Snow v. DirecTV, Inc.,

38

AO 72A

450 F.3d 1314, 1321 (11th Cir. 2006) (internal quotation marks and citation omitted).

Finally, the Court may dismiss a complaint if it does not plead "enough facts to state a claim to relief that is plausible on its face." Chandler, 695 F.3d at 1199 (internal quotation marks and citation omitted).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court observed that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. at 555.  Although factual allegations in a complaint need not be detailed, those allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in

AO 72A

fact)." Id.  Moreover, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  The mere possibility that the defendant might have acted unlawfully is not sufficient to allow a claim to survive a motion to dismiss. Id. Instead, the well-pleaded allegations of the complaint must move the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

## B.  Application

Here, there are three categories of allegations leveled at the Website Defendants: Claims sounding in defamation, claims based on federal statute, and claims based on state

40

statute.[12] The Court addresses the viability of each category

in turn.

## 1.   Plaintiff's Defamation Based Claims

The first five claims in the Amended Complaint are

based solely around Defendant Dominique's post on

Defendant Report Your Ex's website[13]: Defamation (Am.

Compl. ¶¶ 59-64), Libel Per Se (id. ¶¶ 65-71), invasion of

privacy -- false light (id. ¶¶ 72-80), public disclosure of

---

[12]The Court notes that the instant analysis relates only to the claims against the Website Defendants, and is unrelated to the allegations against Defendant Dominique. On the other hand, though Defendant Truth in Posting is not a party to the Motion to Quash, the analysis of the claims against Defendants Remove Names, Remove My Name, and Remove a Posting are equally applicable to Defendant Truth in Posting.

[13]Plaintiff labels her claim for violation of the GFBPA as "Count V," however, counting sequentially, intentional infliction of emotional distress is the fifth claim alleged. (See generally Am. Compl.)

41

private facts (id. ¶¶ 81-86), and intentional infliction of emotional distress (id. ¶¶ 87-91) (collectively, the "Publication Claims"). The Court finds that these claims have little relevancy to the actions of the Website Defendants.

As an initial matter, the Court finds that none of these alleged counts successfully states a claim against the Arbitrator Defendants. While occasionally the Publication Claims refer to "Defendants" generally, nowhere therein does Plaintiff specifically refer to any of the Arbitrator Defendants. (See generally Am. Compl. ¶¶ 59-91.) Further, even construing all the allegations in Plaintiff's favor, the Court cannot find that the Arbitrator Defendants were involved with Defendant Dominque's allegedly defamatory

42

posting. Indeed, Plaintiff states that "[t]his matter arises from false, defamatory, malicious, nasty, and tasteless statements about [] Plaintiff created by Defendant [] Dominique [] and promoted and published by Defendant [Report Your Ex]," with no mention of the Arbitrator Defendants. (Id. ¶ 3.) Consequently the Publication Claims cannot serve as a basis for unmasking the Arbitrator Defendants.

When applied to Defendant Report Your Ex, Plaintiff's Publication Claims fair little better. Again, there is no indication anywhere in the Complaint that Defendant Report Your Ex actually created the Disputed Post, as it appears that Defendant Dominique was its sole author. (See Am. Compl. ¶ 24 ("On or about August 28, 2013, Defendant []

Dominique posted a statement about the Plaintiff via the website <reportyourex.com> and Defendant [Report Your Ex] did publish said statement about the Plaintiff.").) Plaintiff alleges that Defendant Report Your Ex's role in the Disputed Post is through its promotion and publication. (Id.) However, Defendant Report Your Ex has statutory protection from liability for Defendant Dominque's activities in this case.

The Communications Decency Act ("CDA"), codified in part at 47 U.S.C. § 230, states:

> (c)(1) Treatment of publisher or speaker -- No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.
> (e)(3) State Law -- . . .  No cause of action may be brought and no liability may be imposed

44

under any State or local law that is inconsistent with this section.

(f)(2) Interactive Computer Service -- The term "interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server . . ..

47 U.S.C. § 230(c)-(f). "Ultimately, 'Congress made a policy choice . . . not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages.'" Hopkins v. Doe, Civil Action No. 2:11-CV-100-RWS, 2011 WL 5921446, at *1 (N.D. Ga. Nov. 28, 2011) (quoting Zeran v. Am. Online, Inc., 129 F.3d 327, 330-31 (4th Cir. 1997) (alteration in original)).[14]

---

[14]The claims dismissed by the court in Hopkins closely mirror the defamation based claims currently before the Court. See Hopkins, 2011 WL 5921446, at *1-2 ("All of [p]laintiff's state-law claims are based upon [the defendant's] failure to police third-party

AO 72A

While the Court makes no ruling at this point as to the legality of the Disputed Post, given the protections afforded to Defendant Report Your Ex by 47 U.S.C. § 230, the Court cannot find that such postings form the basis of any legally cognizable claims against Defendant Report Your Ex.[15] Consequently, the Court will not order Defendant Report Your Ex unmasked based on Plaintiff's Publication Claims.

---

conduct on its website . . . all of [p]laintiff's claims are predicated upon [] defamatory postings on [the defendant's] website and [the defendant's] decisions regarding how and when it responded to them.").

[15]The Court notes that Plaintiff did not respond to Defendant's CDA immunity argument in her Response to Defendant's Motion to Quash. (See generally Pl.'s Resp. Defs.' Mot. Quash.)

46

AO 72A

## 2.   Plaintiff's Federal RICO Claim

### a.   Relevant Law

Plaintiff alleges that Defendants conspired to violate RICO. (Am. Compl. ¶¶ 96-123.) The RICO statute prohibits activities as follows:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . . .
> (b) It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or

47

ↄ 72A

the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . ..

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962. The definition of "racketeering activity" covers a number of occupations, however, most relevantly for the instant case, it includes "extortion." 18 U.S.C. § 1961(1)(A). A "pattern of racketeering activity" is defined as "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Finally, an "enterprise"  is "any individual, partnership, corporation, association, or other legal entity and any union

48

or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

RICO establishes both civil and criminal penalties for violations of § 1962. <u>See</u> 18 U.S.C. §§ 1963 (criminal penalties), 1964 (civil penalties). With regard to the availability of civil remedies, which are at issue in the instant case, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court." 18 U.S.C. § 1964(c). Therefore, to succeed on a RICO violation claim, Plaintiff must demonstrate that Defendants violated § 1962, that Plaintiff was harmed, and that Defendants' violation of § 1962 caused her injury. <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11th Cir. 1991). At a

49

minimum, "violation of the statute requires '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." <u>Heinrich v. Waiting Angels Adoption Servs., Inc.</u>, 668 F.3d 393, 404 (6th Cir. 2012) (quoting <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 496 (1985)); <u>see also</u> 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER § 1251.1 (stating that in order to demonstrate a violation of § 1962 a plaintiff must show "(1) that the defendant [—a 'person'] (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce").

50

However, "[b]ecause there are fewer proof requirements under § 1962(d) than under the substantive RICO offenses—most notably, through the absence of the requirement of an overt act—the conspiracy offense reaches a wider range of conduct." <u>United States v. Browne</u>, 505 F.3d 1229, 1263 (11th Cir. 2007). "To prove a conspiracy to violate § 1962[], a plaintiff must demonstrate that a defendant 'objectively manifested, through words or actions, an agreement to participate in the conduct of the affairs of the enterprise' through a pattern of racketeering activity." <u>Liquidation Com'n of Banco Intercontinental, S.A. v. Renta</u>, 530 F.3d 1339, 1353 (11th Cir. 2008) (quoting <u>United States v. Starrett</u>, 55 F.3d 1525, 1543 (11th Cir. 1995)). "An agreement to participate in a RICO conspiracy

51

may be shown either by proving 'an agreement on the overall objective of the conspiracy' or by showing that the defendant agreed to commit two predicate acts." Id. (quoting Browne, 505 F.3d at 1264). "The existence of an agreement, as well as its objective, may be inferred from circumstantial evidence demonstrating 'that each defendant must necessarily have known that the others were also conspiring to participate in the same enterprise through a pattern of racketeering activity.'" Id. (alterations in original) (quoting Browne, 505 F.3d at 1264). "But this does not require proof that 'each conspirator agreed with every other conspirator ... [or] was aware of all the details of the conspiracy.'" Id. (quoting Starrett, 55 F.3d at 1544). "Indeed,

52

participation in a conspiracy may be inferred merely from acts which furthered its object." Id.

### b.   Application

Here, peeling away conclusory allegations, Plaintiff alleges the following facts relevant to her RICO claim:

- [Defendant Report Your Ex] encourages spurned ex-boyfriends, ex-girlfriends and ex-wives and ex-husbands from all over the United States to post derogatory statements about former partners following a break-up. (Am. Compl. ¶ 34.)
- [Defendant Report Your Ex] search optimizes its site to ensure that statements appearing on its site will appear first on any Google search ensuring that anyone who searches Plaintiff's name for any reason, including but not limited to background or employment searches, will find the postings on their site. (Id. ¶ 35.)
- On or about August 28, 2013, a defamatory post about [] Plaintiff was created and posted on Defendant [Report Your Ex's] webstie. (Id. ¶ 107.)

53

- []  Plaintiff communicated to Defendant [Report Your Ex] via the contact form on their website and asked them to remove the post from their site on at least three (3) separate occasions. (Id. ¶ 39.)
- The post was not removed. (Id. ¶ 41.)
- Defendant [Report Your Ex] has a page on its website for "removals" of content if you are either the author or the victim of a post and want to have it removed. On the removal page, [Defendant Report Your Ex] directs victims of postings as follows: "If you are the victim of a post and don't agree with what has been posted about you, you can make use of the independent third party services below to challenge. However, this does not mean that the post will be removed. Only upon a successful challenge, the post will be removed if deemed maliciously motivated and unsubstantiated. For more information please visit the sites below: 1) [Defendant Truth in Posting]; 2) [Defendant Remove My Name]; and 3) [Defendant Remove Names]." (Id. ¶ 42.)
- When anyone clicks on any of the three referenced sites, all three offer a service to arbitrate to remove the postings for a monetary fee. (Id. ¶ 43.)

- On the side of the same removal webpage within [Defendant Report Your Ex's] website there are various advertisements, including but not limited to [Defendant Remove a Posting], soliciting the victims of postings for services to remove the postings all for a fee. (Id. ¶ 44.)

- Although [Defendnant Report Your Ex] claims that the advertised services are being provided by independent third parties, all four of the domains of the allged "independent third party legal service providers" are registered to [Defendant Domains By Proxy] and at least three of them are represented by the same legal counsel as [Defendant Report Your Ex]. (Id. ¶ 45.)

- In addition to the "Removals" page on [Defendant Report Your Ex's] website, the site also has a page entitled "Suing Report Your Ex." On this page, [Defendant Report Your Ex] directs victims of posts as follows: "First, let us address the main issue at hand. We do not remove reports, comments, posts and/or topics, These will not be removed even if the statements are claimed to contain defamatory allegations. We will not remove them, even if the original author requests it.

55

We do however work with 3rd Party legal arbitration services." (<u>Id.</u> ¶ 46.)

-   Moreover, [Defendant Report Your Ex's] "Suing Report Your Ex" page threatens victims who pursue legal action against them as follows: "Understand that we will not settle out of court without first obtaining a repayment of our legal fees as well as damages. We will not allow you to change your mind in the middle of a lawsuit against us and walk away free and clear. If you choose to disregard the laws that protect us, we will not settle without compensation for our legal fees and damages. Furthermore, if you do not settle the case with us under these guidelines and decide to see it to the end, once we have won the case, we reserve the right to countersue for damages incurred during the case. Also, being that the case will be public record we will also share all allowable information regarding the suit to all major news and media companies. This means that if your goal is to shut us down based on 'stress factors,' it will not work. We will forward all information to all the news publications and broadcasting companies so that they may expose your extortion efforts to the general public." (<u>Id.</u> ¶ 47.)

56

- [Defendant Report Your Ex] also has a page entitled "Questions about Report Your Ex." On this page, [Defendant Report Your Ex] claims that it does not profit from removing posts [. . .].

- Defendant Report Your Ex has entered into agreements with [the Arbitrator Defendants] wherein [Defendant Report Your Ex] posts links to their sites and recommended these sites to assist victims with the removal of derogatory posts. [The Arbitrator Defendants] charge fees ranging from $199.00 to $699.00 for "arbitration" or to assist in the removal of posts from [Defendant Report Your Ex]. (Id. ¶ 49.)

- The [Website Defendants] are all owned by the same people. [The Website Defendants] are conspiring and have agreed to commit extortion, and have in fact committed extortion. (Id. ¶ 50.)

- Upon information and belief, none of these Defendants guarantee that the negative post will be removed if someone pays for their services. (Id. ¶ 51.)

- Upon information and belief, Defendant [Report Your Ex] does profit from the publishing of statements on it's website by getting money directly from individuals who

57

pay for the removal of posts via [the Arbitrator Defendants]. (Id. ¶ 52.)

- As a result of the publication of the defamatory statement on the website, Plaintiff has experienced both emotional and financial harm, including injury to her business. Plaintiff has suffered severe emotional distress for which she has had to seek counseling. (Id. ¶ 58.)

- [] Defendants have agreed to enter into a conspiracy that has engaged in interstate commerce through the creation, operation, administration, and maintenance of at least five (5) websites published world-wide including in all 50 states. (Id. ¶ 104.)

- The conspiracy which has created, operated, and maintained the websites has conducted racketeering activity by encouraging former boyfriends, girlfriends, and ex-husbands and wives and anyone who wishes to write defamatory, tasteless, derogatory and wholly inappropriate posts on its website. These posts are published on the Internet. (Id. ¶ 105.)

- [] Defendants engage in deceptive practices regarding the ownership of these websites by claiming that they are "independent 3rd party"

58

> websites, when they are in fact operated by the same individual or individuals. (Id. ¶ 109.)
> - As a result of the creation of this conspiracy and enterprise, Defendants have derived income . . .. (Id. ¶ 111.)
> - The . . . activities of [] Defendants have caused injury to Plaintiff's business and/or property by publication of her name and defamatory statements regarding [] Plaintiff and their attempts to extort money from Plaintiff for the removal of said statements have caused further injury. (Id. ¶ 112.)

Based on these factual allegations, Plaintiff requests that the Court find that Defendants "have been involved in a widespread criminal enterprise engaged in a pattern of racketeering activity across State lines, and a conspiracy to engage in racketeering activity involving RICO predicate acts through the creation, operation, administration, and maintenance of at least five (5) websites published in all 50 states." (Id. ¶ 53.)

AO 72A

For the following reasons, the Court finds that Plaintiff's RICO Conspiracy allegations are sufficient to survive a Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss, and therefore justify the unmasking of the Website Defendants in this case.

### i. Conduct of an Enterprise

Defendants do not appear to challenge the requirement that Plaintiff allege that Defendants operated an enterprise that conducted activities in interstate commerce. (See Mot. Quash at 7-11; Reply Supp. Mot. Quash (Docket Entry No. 20) at 11-14.) Nonetheless, the Court notes that the Amended Complaint contains allegations sufficient to support these requirements. The "enterprise" prong is satisfied by Plaintiff's allegation that "Defendant Report

AO 72A

Your Ex has entered into agreements with [the Arbitrator Defendants]" (Am. Compl. ¶ 49), creating a "group of individuals associated in fact although not a legal entity," 18 U.S.C. § 1961. Plaintiff's allegations that Defendant Report Your Ex "encourages spurned ex-boyfriends, ex-girlfriends and ex-wives and ex-husbands from all over the United States to post derogatory statements about former partners following a break up" (Id. ¶ 34), and that Defendants maintain "at least five (5) websites published world-wide including in all 50 states" (id. ¶ 104), satisfy the requirement that Defendants conducted activities in interstate commerce.

61

### ii.   Conspiracy

Defendants contend that Plaintiff's RICO Conspiracy claim fails to adequately allege a "pattern of racketeering activity," and therefore cannot withstand a motion to dismiss. (See Mot. Quash at 8-11; Reply Supp. Mot. Quash at 11-14.) The Court disagrees.

Because the instant claim is a conspiracy claim, Plaintiff is not required to plead a pattern of racketeering activity.[16] Instead she must allege "an illegal agreement to

---

[16]The Court also notes that, contrary to Defendant's assertions, Plaintiff is not held to the "particular pleading" standard of Federal Rule of Civil Procedure 9(b). (Mot. Quash at 9.) The cases holding RICO plaintiffs to that high standard involved claims that defendants violated RICO through wire fraud. See Amrbosia Coal & Constr. Co. v. Morales, 482 F.3d 1309, 1311 ("The [c]omplaint alleges that Appellees fraudulently induced [Appellant] into entering a settlement agreement."), 1316 (citing Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364 (11th Cir. 1997) (another RICO case involving claims of fraud)). No claims of fraud are present here.

violate a substantive provision of the RICO statute."
Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1269
(11th Cir. 2004). As discussed above this can be done
either by demonstrating "an agreement on the overall
objective of the conspiracy or by showing that the defendant
agreed to commit two predicate acts." Renta, 530 F.3d at
1353 (internal quotation marks and citation omitted).

Here, the Complaint adequately asserts that an
agreement exists.[17] (See Am Compl. ¶¶ 49 ("[Defendant

_____

[17]Defendants argue, based on statements posted on
Defendant Report Your Ex's website and copied into the Complaint,
that Defendant Report Your Ex only informs internet visitors of the
Arbitrator Defendants existence, and such an affiliation between
independent businesses does not amount to a RICO conspiracy.
(See Reply Supp. Mot. Quash at 14.) While such an affiliation
would not amount to a RICO conspiracy, Defendants
mischaracterize the Complaint, which clearly alleges that the
removal fees paid to the Arbitrator Defendants are finding their way
back to Defendant Report Your Ex. Whether or not that assertion
is true is a matter to be addressed on summary judgment.

Report Your Ex] has entered into agreements with [the Arbitrator Defendants].");  ¶ 52 ("Defendant [Report Your Ex] does profit from the publishing of statements on it's [sic] website by getting money directly from individuals who pay for the removal of posts via [the Arbitrator Defendants].").) However, "'[t]o be guilty of conspiracy, ... parties must have agreed to commit an act that is itself illegal—parties cannot be found guilty of conspiring to commit an act that is not itself against the law.'" <u>Jackson</u>, 372 F.2d 1250 at 1269 (alteration in original) (quoting <u>United States v. Vaghela</u>, 169 F.3d 729, 732 (11th Cir. 2004)). Therefore, the relevant question is whether the alleged agreement, if carried out by Defendants, would constitute a violation of the substantive provisions of RICO.

64

Viewing the Complaint in the light most favorable to Plaintiff, it alleges the following agreement: (1) Defendant Report Your Ex encourages third parties to post defamatory statements about victims on its website (Am. Compl. ¶ 33-34); (2) Defendant Report Your Ex then search optimizes the postings to appear in Google searches, ensuring that the posts have the maximum effect on the intended victim (id. ¶ 35); (3) when the victim requests removal, Defendant Report Your Ex does not remove the posts itself, but instead directs victims to the Arbitrator Defendants' websites for assistance with removal (id. ¶ 42); (4) the Arbitrator Defendants then agree to help with a removal for a fee of between $199.00 and $699.00 (id. ¶ 49); (5) however, either because Defendant Report Your Ex and the

65

Arbitrator Defendants have an agreement with each other, or because they are controlled by the same ownership group, the removal fee finds its way back in to the hands of Defendant Report Your Ex (id. ¶¶ 49-50, 52); and (6) without assistance from one of the Arbitrator Defendants or a Court order, posts will not be removed (id. ¶¶ 46, 48). The Court finds that such an agreement, if carried out, would violate the substantive provisions of RICO.

Extortion is specifically listed as a "racketeering activity" under the RICO statute. See 18 U.S.C. § 1961(1)(a). Under Georgia law, "[a] person commits the offense of theft by extortion when he unlawfully obtains property of or from another person by threatening to . . . [d]isseminate any information tending to subject any person to hatred,

66

comtempt, or ridicule or to impair his credit or business repute." O.C.G.A. § 16-8-16(a)(3). Defendants contend that "the conduct Plaintiff describes is not extortion under Georgia law." (Reply Supp. Mot. Quash at 12.) However, the Court disagrees.

Plaintiff alleges that Defendant Report Your Ex disseminates information tending to subject victims to, at the least, ridicule. Defendants contend that because the Complaint alleges that Defendant Dominique authored the post, it fails to demonstrate extortion on the part of Defendants. (See Reply Supp. Mot. Quash at 12-13.) However, the Amended Complaint sufficiently alleges that Defendant Report Your Ex is the party disseminating defamatory information, which is all the statute requires.

67

(<u>See</u> Am. Compl. ¶¶ 33-35 (describing how Defendant Report Your Ex makes defamatory posts "widely accessible by the general public").) Defendants also appear to argue that because Defendant Report Your Ex will also remove posts when instructed by a court or other arbitration services, they do not commit extortion by accepting money to remove the posts themselves. (<u>See</u> Reply Supp. Mot. Quash at 13.) However, the language of the statute does not support such a reading, as unlawfully obtaining any property based on the threat of disseminating defamatory information amounts to extortion. <u>See</u> O.C.G.A. § 16-8-16 ("A person commits the offense of theft by extortion when he <u>unlawfully obtains property from another person</u> . . ." (emphasis added).) Finally, while perhaps Defendants could

68

argue that simply keeping defamatory posts publically available until Plaintiff pays the Arbitrator Defendants is not a "threat," the Court finds that, at this early stage in the litigation, such distinction is not fatal to Plaintiff's claim.

Under these circumstances, the Court finds that the Amended Complaint adequately alleges that the "overall objective of the [alleged] conspiracy," namely the extortion of money from those unfortunate enough to be subject to a post on Defendant Report Your Ex's website, would be a violation of the substantive provisions of RICO. Consequently, the Court moves on to the damages requirement.

69

### iii.   Damages

Finally, the Complaint adequately alleges damages. "As a result of the publication of the [Disputed Post] on [Defendant Report Your Ex's] website, Plaintiff has experienced both emotional and financial harm, including injury to her business. Plaintiff has suffered severe emotional distress for which she has had to seek counseling." (Am. Compl. ¶ 48.) Defendants do not appear to challenge this element.

### c.   Summary

The Court finds that the Amended Complaint adequately asserts a claim for conspiracy to violate RICO. Viewed in the light most favorable to Plaintiff, it accuses Defendant Report Your Ex of continuing to publish

AO 72A

defamatory statements about victims until such victims pay a fee to websites affiliated to Defendant Report Your Ex, either through overlapping ownership or agreements to pay Defendant Report Your Ex a portion of these fees. In other words, Plaintiff adequately alleges that the Website Defendants have agreed to create an enterprise whose sole purpose is the repeated extortion of victims similarly situated to Plaintiff. The Court finds that the Amended Complaint moves this theory "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Therefore, Plaintiff's RICO Conspiracy claim is sufficient to overcome the Motion to Quash, and allow for the unmasking of the Website Defendants.

71

### 3.    Plaintiff's GFBPA Claim

Plaintiff's last unaddressed claim is that Defendants violated the GFBPA. (See Am. Compl. ¶¶ 92-95.) However, because the Court finds Plaintiff's RICO Conspiracy claim sufficient to overcome Defendants' Motion to Quash, and there is only limited briefing on the GFBPA issue, the Court declines to address it now, and will allow Defendants, should they choose, to file a formal Motion to Dismiss once they make a proper appearance in this case.

### C.   Final Matters

The instant circumstances are unique in that the Court has evaluated Plaintiff's Amended Complaint for sufficiency prior to any motions to dismiss being filed. While the issues relevant to a Motion to Dismiss received some briefing,

72

given the other issues relevant to the Motion to Quash, no Party has been fully heard with regard to the sufficiency of the claims in this case. Under these circumstances, the Court finds it appropriate to leave all claims pending until a proper motion to dismiss can be filed and briefed. Further, while the above discussion is indicative of the Court's thoughts on the sufficiency of Plaintiff's RICO conspiracy claim, Defendants are welcome to move the Court to dismiss it nonetheless, and the Court will consider whatever new arguments they may put forth.

## III.  Motion for Service

On February 25, 2014, Plaintiff filed a Motion for Service by Publication as to Defendant Dominique. (Docket Entry No. 17.)  The time period in which Defendants could

73

AO 72A

respond to the Motion has expired, and the Clerk's docket indicates that Defendants have not filed responses to the Motion.  (See generally Docket.) The Court therefore finds that the Motion is due to be granted as unopposed.  See N.D. Ga. R. 7.1B ("Failure to file a response shall indicate that there is no opposition to the motion.").  Alternatively, the Court's review of the Motion and supporting materials reveals that Defendant Dominique is attempting to evade service of process and that service of process by publication is warranted.

Plaintiff requests that she be allowed to serve Defendant Dominque at the email "gtdominique72@yahoo.com," which appears to be valid and operational. (Mot. Service (Docket Entry No. 17) ¶ 21.)

74

While the Court agrees that all legal documents should be provided to Defendant Dominique at that email address, in order to comply with Georgia law, the Court directs Plaintiff to also serve Defendant Dominique by publication of summons in the last place in which Defendant Dominique resided to the knowledge of Plaintiff, namely DeKalb County, Georgia. See O.C.G.A. 9-11-4(f)(1); Aff. of Kristal Holmes (Docket Entry No. 17-1) ¶ 5.

## IV.  Motion to Dismiss

Defendants Pickard and Truth in Posting filed a Motion to Dismiss for Lack of Personal Jurisdiction. (Docket Entry No. 19.) They assert that "[n]either Georgia's long-arm statute, nor the Due Process Clause of the Fourteenth Amendment" provide for jurisdiction over them in this Court.

75

AO 72A

(Br. Supp. Mot. Dismiss (Docket Entry No. 19-1) at 3.) While generally the Court endeavors to address all pending motions at once, under the instant circumstances, the Court finds delaying ruling on the Motion to Dismiss to be the best course of action. The Court anticipates similar motions will be filed by the other Website Defendants once their identities are revealed and they make an appearance in this case. (See Mot. Quash at 1 (reserving the "right to file a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(2)").) Given this likelihood, and the probability that the issues concerning personal jurisdiction over the unknown Website Defendants will closely mirror the issues concerning personal jurisdiction over Defendants Truth in Posting and Pickard, the Court declines to rule on the

pending Motion to Dismiss in the instant Order. Once the unknown Website Defendants have made an appearance and been given adequate opportunity to file any similar motions to dismiss that they may wish to file, the Court will take up Defendants Truth in Posting and Pickard's Motion to Dismiss.

## V.   Remaining Matters

In its January 3, 2014, Order, the Court denied Plaintiff's Motion for Leave to Proceed under a Pseudonym, and directed Plaintiff to include her name on all future filings in this case. (See Order of Jan. 3, 2014 (Docket Entry No. 5) at 30.) However, Plaintiff continues to file motions and responses under the pseudonym "Jane Doe." (See generally Docket.) Consequently, the Court directs Plaintiff

77

to comply with the Court's previous Order, and include her name as a Party-Plaintiff on all future filings.

Further, while the Court sealed the instant docket at Plaintiff's request, the Court is aware that Defendants have yet to be heard on the matter. The Court will entertain any issues the Defendants have with continuing restrictions on access to this case upon an appropriate motion.

## VI. Conclusion

ACCORDINGLY, the Court **DENIES** Defendants' Motion to Quash Plaintiff's Subpoenas [11] and **GRANTS** Plaintiff's Request for an Order Compelling Production [16].

The Court **GRANTS** Plaintiff's Motion for Service of Process as to Defendant Dominique [17]. Plaintiff is authorized to serve Defendant Dominique by publication as

78

provided by Federal Rule of Civil Procedure 4(e)(1) and O.C.G.A.  § 9-11-4(f)(1).   More specifically, Defendant Dominique may be served with process in the County and State where he last resided, that being DeKalb County, Georgia, by publication in an appropriate newspaper of general circulation in DeKalb County.  The Court **DIRECTS** Plaintiff to complete and return to the Clerk **WITHIN FOURTEEN (14) DAYS AFTER THE DATE OF THIS ORDER** a Notice of Summons in the form prescribed by O.C.G.A. § 9-11-4(f)(1)(C), which shall contain the names of the Parties, with a caption setting forth the name of the Court, the character of the action, the date the action was filed, the date of this Order, and a notice directed and addressed to Defendant Dominique, commanding him to file

79

AO 72A

with the Clerk and serve upon Plaintiff's counsel an Answer within seventy-five (75) days after the date of this Order.

Once Plaintiff provides the Clerk with this Notice, the Clerk is **DIRECTED** to sign the Notice and return the same to counsel for Plaintiff for publication through the appropriate DeKalb County newspaper, and to mail, a copy of the Amended Complaint, along with this Order and a copy of the Notice provided by Plaintiff, to Defendant Dominique's last-known address.   Once the Clerk signs the Notice, Plaintiff's counsel is **ORDERED** to cause publication of the Notice to be made in the appropriate newspaper of general circulation in DeKalb County four (4) times within the seventy-five (75) days following the entry of this Order, with each of the four (4) publications taking place at least seven

80

(7) days apart.   Plaintiff must arrange directly with the newspaper to pay the costs of publication. Additionally, Plaintiff is **DIRECTED** to serve Defendant Dominique with this Order and all legal documents associated with this case at the email address "gtdominuqe72@yahoo.com."

The Court **DEFERS** ruling on Defendants Pickard and Truth in Posting, LLC's Motion to Dismiss for Lack of Personal Jurisdiction [19], which **REMAINS PENDING**.

IT IS SO ORDERED, this the 9 day of April, 2014.

UNITED STATES DISTRICT JUDGE

81

AO 72A