IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

KRISTAL HOLMES,

    Plaintiff,

v.                    CIVIL ACTION FILE
                      NO. 1:13-CV-04270-HLM

GRAMBLING T. DOMINIQUE Jr.,
a.k.a. ERNEST EUGENE SLADE,

    Defendant.

## ORDER

This case is one for defamation and intentional infliction of emotional distress.  The case is before the Court on the Court's August 7, 2014, Order [62], Defendant's Motion to Dismiss [105], Defendant's Motion for Sanctions [106], and Defendant's Motion for Production of Phone Records [107].

AO 72A

# I.  Procedural Background

1.    The Court incorporates the Background portion of its August 7, 2014 Order as if set forth fully herein.  (Order of Aug. 7, 2014 (Docket Entry No. 62).)  The Court adds only those background facts that are relevant to the instant Order.

2.    On August 7, 2014, the Court granted Plaintiff's Motion for Default Judgment against Defendant Dominique. (Aug. 7, 2014, Order.)

3.    On August 28, 2014, Plaintiff submitted her Brief in Support of Damages against Defendant Dominique.  (Br. Supp. Damages (Docket Entry No. 65).)

4.    On November 14, 2014, the Court denied Defendant Dominique's Motions to Set Aside Default and

2

Motions to Dismiss along with Plaintiff's Motion to Strike Motion to Set Aside Default and Motion to Strike Motion to Dismiss.  (Nov. 14, 2014, Order (Docket Entry No. 95).) The Court further ordered Defendant Dominique to notify the Court of his mailing address, his email address, and telephone number along with whether he intended to represent himself.  (Id.)  Defendant Dominique failed to respond to the Court's Order.  (See generally Docket.)

5.   The Court had previously ordered Defendant Dominique to notify the Court whether he intended to represent himself or to provide the name and address of his new counsel. (Oct. 22, 2014, Order (Docket Entry No. 89).) Defendant Dominique did not respond.  (See generally Docket.)

6.    On several occasions, mail sent to Defendant Dominique's last known address was returned as undeliverable. (See e.g. Docket Entry Nos. 94, 97, and 99.) Defendant Dominique, however, still had notice of the Court's Orders.  (See e.g. Docket Entry No. 101.)

7.    On December 16, 2014, the Court scheduled a hearing on damages resulting from the default judgment against Defendant Dominique and ordered counsel, Plaintiff, and Defendant Dominique to appear before the Court at 1:30 p.m on Friday, January 9, 2015.  (Dec. 16, 2014, Order (Docket Entry No. 98).)

8.    On the morning of January 9, 2015, Defendant Dominique contacted the Court to say that he would be unable to appear at the hearing because of flight delays in

4

Chicago. Defendant Dominique also sent a series of emails to the Court colorfully expressing his displeasure with the Court, Plaintiff, Plaintiff's counsel, and the State of Georgia. (Docket Entry No. 101.)

9.    The Court construed Defendant Dominique's request as an Oral Motion to Continue and granted the Motion. (Second and Third Unnumbered Docket Entries Dated Jan. 9, 2015.) The Court rescheduled the damages hearing for Monday, January 12, 2015 at 1:30 p.m. (Third Unnumbered Docket Entry Dated Jan. 9, 2015.)

10.   Defendant Dominique, in a phone call to the Court, claimed that he is deaf and that he needed to have phone conversations recorded through a relay. Plaintiff states that during the time she knew Defendant Dominique he was not

deaf, she never had any trouble communicating with him, and he did not use any additional technology to communicate via telephone.  (Tr.)

11.  After being informed that the Court rescheduled the hearing to allow Defendant Dominique time to travel from Chicago to Atlanta, Defendant Dominique sent the Court another series of emails indicating that he would not be attending the hearing and once again colorfully expressing his displeasure.  (Docket Entry No. 103.)

12.  On January 12, 2015, the Court conducted the scheduled hearing on damages with Plaintiff and Plaintiff's counsel present.  Defendant Dominique did not appear. (Docket Entry No. 102.)

AO 72A

13.   The Court took the matter under advisement, and this Order addresses the issue of Plaintiff's relief against Defendant Dominique.

14.   On January 12, 2015, the day of the damages hearing, Defendant Dominique filed a Motion to Dismiss (Docket Entry No. 105), a Motion for Sanctions (Docket Entry No. 106), and a Motion for the Court to issue and order for the production of outgoing phone records from the Rome Clerk's Office for the defenses review ("Motion for Production") (Docket Entry No. 107).

15.   On the same day, Defendant Dominique also submitted a Notice that Defendant will be acting pro se (Docket Entry No. 108) and three Declarations of Grambling T. Dominique Jr. (Docket Entries Nos. 109, 110, 111).

7

AO 72A

## II.   **Findings of Fact**[1]

1.    Plaintiff is an attorney with a juris doctor from the Emory University School of Law.  She has practiced on her own and as a part-time solicitor in Suwanee, Goergia.  (Tr.)

2.    Plaintiff had a four month long romantic relationship with Defendant Dominique before ending the relationship.  (Tr.)

---

[1]The Court only includes those facts relevant to its decision. Additionally, the Court accepts the well-pleaded allegations of the Complaint as true with respect to Defendant Dominique, as Defendant Dominique admitted those allegations by failing to properly respond to the Complaint.  See Burlington N. R.R. Co. v. Huddleston, 94 F.3d 1413, 1415 (10th Cir. 1996) ("By failing to submit an answer or other pleading denying the factual allegations of Plaintiff's complaint, Defendant admitted these allegations, thus placing no further burden upon Plaintiff to prove its case factually."); see also Fed. R. Civ. P. 8(b)(6) ("An allegation--other than one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied.").

3.    In July 2013, Defendant Dominique commented on one of Plaintiff's YouTube videos with offensive comments. (Tr.; Pl. Ex. 4.)  Defendant Dominique also commented on an online article about Plaintiff's appointment as a solicitor. (Tr.; Pl. Ex. 3.)

4.    On or about August 30, 2013, Plaintiff learned of a post about her, written by Defendant Dominique, on reportyourex.com.  (Tr.; Pl. Ex. 2.)

5.    The post contained a number of false claims about Plaintiff's job and her co-workers, that she hid her baby from Defendant Dominqiue, that she pulled guns on people and dated thugs, that she was in cahoots with the court system, and more.  (Tr.)

9

6.    Plaintiff testified that many people had seen the post. The post was later quoted in part on a legal blog, abovethelaw.com, which quoted one of Defendant Dominque's Motions in this case. (Tr.) The abovethelaw.com article has been shared at least two thousand times,[2] and it contained Defendant Dominique's Motion to Dismiss as well as Defendant Dominique's claim that Plaintiff hid her baby. (Tr.; Pl. Ex. 9.) Google searches for Plaintiff's name also returned the abovethelaw.com article, a website with parts of the original post, and more websites linking to the abovethelaw.com article. (Tr.; Pl. Exs. 10, 11, 12.)

---

[2]The Court notes, and Plaintiff's testimony suggested, that the number of shares is likely much smaller than the number of views as people who shared the article likely read it, but people who read the article did not necessarily share it.

10

7.    Plaintiff could not testify that anyone believed the post except that her mother saw it and thought that Plaintiff had written something about Defendant Dominique on the website.  (Tr.)  Several clients saw it and asked her about it, although she did not lose those clients.  (Tr.)

8.    After learning of the post, Plaintiff attempted to get reportyourex.com to remove the posting, but the website refused.  (Tr.)

9.    Plaintiff called Defendant's mother to see if she could get the post taken down.  (Tr.)

10.   Plaintiff's attorney called Defendant Dominique in early October 2013 and asked him to take down the post. (Tr.)

11

11.   Plaintiff, after taking time off after the birth of her daughter, planned to pursue a full time job in May of 2013. (Tr.)

12.   Plaintiff had interviews with a district attorney and a public defender's office but did not receive job offers from either.  (Tr.)  Plaintiff believes she did not receive job offers because these potential employers saw the reportyourex.com post.  (Tr.)  The district attorney job paid between $50,000 and $79,000, depending on experience, and the public defender job paid $50,000.  (Tr.)

13.  Plaintiff's previous annual income was approximately $80,000.  (Tr.)

14.  Plaintiff testified that she was embarrassed and humiliated by the posting and stopped looking for jobs

AO 72A

because she was afraid that employers would see the post when they searched her name on the internet.  (Tr.)

15.  Plaintiff believes that a court order in her favor would aid her in getting a job.  (Tr.)

16.  Plaintiff states that other than the names, her profession, and where she lives, Defendant Dominique's post is entirely false.  (Tr.)

17.  Plaintiff discovered that during their relationship, Defendant had lied to Plaintiff about his real name, his profession, his family, and his background.  (Tr.)

18.  Plaintiff discovered that Defendant Dominique had, without her knowledge, used her credit card to pay his cell phone bill.  (Tr.)

13

19. Plaintiff conducted a background check on Defendant Dominique and found his real name, multiple criminal convictions, and other women whom he had also conned. (Tr.)

20. Plaintiff testified that after discovering Defendant Dominque's deception and finding the reportyourex.com post, Plaintiff suffered from depression, lack of sleep, and suicidal thoughts. (Tr.) As a result, Plaintiff sought counseling from a pastor. (Id.)

21. Plaintiff is unable to gauge Defendant Dominique's net worth or what assets he may have. (Tr.) According to him, he has a 2007 Bentley convertible.

22. Plaintiff's attorney states that she has billed $41,022 in fees, not including the time spent on the

14

hearings on January 9, 2014 or January12, 2015.   (Tr.)
Plaintiff's attorney spent four and half hours on this case on
January 9, 2014 and three and a half hours on January 12,
2015.   Plaintiff's attorney bills at a rate of $375 per hour,
which she believes is reasonable for an attorney of her
experience and skills in the Atlanta metropolitan area.[3] (Id.)
Plaintiff's attorney claims that her colleagues charge
between $325 and $425 for civil litigation in Atlanta.  (Id.)

---

[3]Pl. Ex. 8 also contains two lines of charges for the work of R.
Christopher Russell at a rate of $475.00.  (Pl. Ex. 8.)  Plaintiff
provided no evidence about the reasonableness of this rate at the
damages hearing.  (Tr.)  Plaintiff's attorney did, however, submit a
declaration stating that a fee of $425.00 per hour is reasonable for
Mr. Russell.  (Decl. of Sandra Finch (Docket Entry No. 65-2) ¶¶ 2-
3.)

## III.  Conclusions of Law

### A.  Defamation

1.  Count I of Plaintiff's Second Amended Complaint alleges that Defendant Dominique defamed Plaintiff by intentionally and maliciously making statements that Plaintiff acted unethically as an attorney and engaged in illegal conduct, as well as describing Plaintiff's sexual behavior. (2nd Amd. Compl. (Docket Entry No. 38) ¶¶ 62-68.)

2.  Count II of Plaintiff's Second Amended Complaint alleges libel per se because Defendant Dominique made false statements about Plaintiff with regard to her profession, criminal activity, and sexual behavior.  (2nd Amd. Compl ¶¶ 69-75.)

16

3.     Count III of Plaintiff's Second Amended Complaint stated a claim for invasion of privacy - false light, asserting that Defendant Dominique willfully posted libelous language directed at the moral turpitude of Plaintiff that placed Plaintiff in a false light.  (2nd Amd. Compl. ¶¶ 76-83.)

4.     Count IV of Plaintiff's Second Amended Complaint states a claim for public disclosure of private facts stemming from Defendant Dominique's public disclosure of Plaintiff's sex life on the internet.  (2nd Amd. Compl. ¶¶ 84-89.)[4]

5.     Under O.C.G.A. § 51-5-1, "(a) A libel is a false and malicious defamation of another, expressed in print, writing,

---

[4]Given that Plaintiff's only issue is the online posting by Defendant Dominique, the Court treats Count I, Count II, Count III, and Count IV as pleaded in the alternative because each constitutes a separate theory of liability for the same conduct of Defendant Dominique.

AO 72A

pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule. (b) The publication of the libelous matter is essential to recovery." O.C.G.A. § 51-5-1. "'As to proof of malice, proof that the writing is false, and that it maligns the private character or mercantile standing of another, is itself evidence of legal malice.'" Lucas v. Cranshaw, 289 Ga. App. 510, 512, 659 S.E.2d 612, 615 (2008) (quoting John D. Robinson Corp. v. S. Marine & Indus. Supply Co., 196 Ga. App. 402, 404, 395 S.E.2d 837, 840 (1990)).

6. Defendant Dominique expressed in writing, via reportyourex.com, a number of accusations injurious to the reputation of Plaintiff. The Court finds, based on Plaintiff's testimony, that Defendant Dominique's statements were

18

false.  The Court further finds that Defendant Dominique's post was malicious as the statements were false and seriously maligned Plaintiff's private character.

7.   Under Georgia law, a "written defamatory statement is actionable as either libel per se or libel per quod."  Zarach v. Atlanta Claims Ass'n, 231 Ga. App. 685, 688, 500 S.E.2d 1, 4-5 (1998).  Libel per se can come in several forms.  "'[A] charge that one is guilty of a crime, dishonesty or immorality'" constitutes libel per se.  Id. (quoting Barber v. Perdue, 194 Ga.App. 287, 288, 390 S.E.2d 234, 235 (1989)).  Statements that "injure one in his trade or business also are libelous per se."  Id.

8.   "When determining whether words are defamatory as a matter of law, courts may not hunt for strained

constructions, and must rely upon the words themselves in considering whether a statement was defamatory per se." Id. (citation omitted).   Furthermore, when "considering whether a writing is defamatory as a matter of law, [courts] look not at the evidence of what the extrinsic circumstances were at the time indicated in the writing, but at what construction would be placed upon it by the average reader." Macon Tel. Pub. Co. v. Elliott, 165 Ga. App. 719, 721, 302 S.E.2d 692, 694 (1983).  Plaintiffs "cannot rely on rumor, innuendo, and extraneous circumstances to create an inference of defamation."   Willis v. United Family Life Ins., 226 Ga. App. 661, 663, 487 S.E.2d 376, 379 (1997).

9.   Because Defendant Dominique's post contained charges impugning Plaintiff's character, accusing her of

criminal activity, claiming that she hid Defendant Dominique's baby from him, purporting that she was having local court officials hide court filings, and otherwise suggesting that Plaintiff consorted with thugs and drug dealers and pulled a gun on someone, the Court concludes that Defendant Dominique is liable for libel per se. It is clear that an average person, viewing these statements without any extrinsic context, would find them defamatory on their face.[5]

---

[5]The Court subsequently dismisses Count 1, Count III, and Count IV of Plaintiff's Second Amended Complaint because as Plaintiff cannot recover under defamation, libel per se, and invasion of privacy theories for the same conduct of Defendant. See e.g., Brookhaven Landscape & Grading Co. v. J. F. Barton Contracting Co., 676 F.2d 516, 523 (11th Cir.) adhered to, 681 F.2d 734 (11th Cir. 1982) ("Litigants in federal court may pursue alternative theories of recovery, regardless of their consistency. Fed.R.Civ.P. 8(e)(2). A party may not, however, recover separately on inconsistent theories when one theory precludes the other or is mutually exclusive of the other.").

AO 72A

10.  "No proof of special damage is necessary in the case of libel per se. General damages are recoverable." Rosanova v. Playboy Enterprises, Inc., 411 F. Supp. 440, 445 (S.D. Ga. Apr. 6, 1976), aff'd, 580 F.2d 859 (5th Cir. 1978).  "Punitive damages are awardable in a case where supporting facts exist independent of the presumption of malice arising by the mere fact of defamation."   Id. Evidence of "loss of employment, income, or profits is categorized as special damage" that is only necessary when the defamatory statements are not libelous per se.  Hayes v. Irwin, 541 F. Supp. 397, 432 (N.D. Ga. June 4, 1982), aff'd, 729 F.2d 1466 (11th Cir. 1984) and  aff'd sub nom. Hayes v. Irwin Trading, 729 F.2d 1466 (11th Cir. 1984).  In this case, Plaintiff need not prove special damages as

AO 72A

Defendant Dominique's false and malicious statements constitute libel per se.

11.   Plaintiff seeks to recover for loss of income.  The Court finds that while there is evidence before the Court about Plaintiff's income in the past, there is not any evidence from which the Court can actually determine any loss of income of Plaintiff to this date caused by the acts of Defendant Dominique.  The Court further finds that there is no evidence in the record as to what future income Plaintiff may lose as a result of this incident.

12.   On the issue of libel, the Court finds that Plaintiff is entitled to recover in the amount of $40,000.[6]

---

[6]Because Plaintiff's recovery for libel per se and intentional infliction of emotional distress is punitive in nature, the Court concludes that Plaintiff is not entitled to recover additional punitive damages.

AO 72A

## B. Intentional Infliction of Emotional Distress

13. Plaintiff also seeks damages for intentional infliction of emotional distress. (2nd Amd. Compl. ¶¶ 90-94; Pl. Ex. 13.)

14. "To recover on an intentional infliction of emotional distress claim in Georgia, a plaintiff must show: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) the wrongful conduct caused the emotional distress; and (4) the emotional harm was severe." Bradley v. Pfizer, Inc., 440 F. App'x 805, 810 (11th Cir. 2011). "Extreme and outrageous conduct is that which is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

24

intolerable in a civilized community.'" Id. (quoting Canziani v. Visiting Nurse Health Sys., Inc., 271 Ga. App. 677, 679, 610 S.E.2d 660, 662 (2005)).   "'The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.'" Id. (quoting Bridges v. Winn-Dixie Atlanta, Inc., 176 Ga. App. 227, 230, 335 S.E.2d 445, 448 (1985)).

15.   There is no question that Defendant Dominique intentionally posted on reportyourex.com and made a number of defamatory statements about Plaintiff. Defendant Dominique also posted inflammatory statements about Plaintiff on Plaintiff's YouTube channel and on an article about Plaintiff's employment, demonstrating that he acted   purposefully   and   outrageously.       Defendant

Dominique's conduct was extreme and outrageous both in the nature and language of his statements and in his refusal to remove the statements.

16. Plaintiff suffered clear emotional distress from Defendant Dominique's actions as she has suffered from severe depression, needed counseling, and constantly worries about other people, including her colleagues, seeing the false accusations Defendant Dominique made against her.

17. Based on the foregoing reasons, the Court finds that Plaintiff is entitled to recover for the intentional emotional distress inflicted on her by Defendant Dominique in the amount of $60,000.

AO 72A

## C.   Injunctive Relief

18.   Plaintiff seeks an injunction ordering the post be removed from the internet and restraining Defendant Dominique from posting anything else defamatory about her.  (Tr.)

19.   A court may grant a preliminary injunction "only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest."   Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir. 2004) (quoting Siegel v. Lepore, 234 F.3d

1163, 1176 (11th Cir. 2000) (en banc) (per curiam).   "'The standard for a permanent injunction is essentially the same as for a preliminary injunction except that the plaintiff must show actual success on the merits instead of a likelihood of success.'" Id. (quoting Siegel, 234 F.3d at 1213). Additionally, "most courts do not consider the public interest element in deciding whether to issue a permanent injunction." Id.

20. As the Court has previously entered a default judgment against Defendant Dominique and found for Plaintiff on her claims for libel per se and intentional infliction of emotional distress, supra Part III.A-B., Plaintiff has succeeded on the merits of this case.

28

21. Plaintiff has also demonstrated that without an injunction she will suffer continued, irreparable damage from Defendant Dominique as, given his persistence in harassing Plaintiff and failure to follow the rules of this Court, it is not unlikely that he will continue to post defamatory comments about Plaintiff.

22. Plaintiff also succeeds on the third element of obtaining a permanent injunction, as Defendant Dominique has no legitimate interest in making defamatory comments about Plaintiff.

23. There is no public interest in allowing Defendant Dominique to make defamatory statements or to spread false information about Plaintiff.

AO 72A

24. Based on the foregoing reasons, the Court will issue an Order restraining Defendant Dominique from making derogatory, untrue comments about Plaintiff on the internet or in other public forums.[7]

## D.   Defendant's Motions

25. Defendant Dominique submitted three unsworn declarations on his own behalf.  Unsworn declarations are permitted so long as they meet the requirements of 28 U.S.C. § 1746.  28 U.S.C. § 1746.  Defendant Dominique's declarations are not proper evidence to support his motions because the declarations were not made under penalty of

---

[7]To the extent Plaintiff seeks an injunction ordering various websites to remove copies of the reportyourex.com post or Defendant Dominique's other statements about Plaintiff, that request is denied.  Those individuals or entities are not presently before the Court and thus the Court does not have jurisdiction to enter an injunction against them.

perjury.  See In re McGuire, 450 B.R. 68, 73 (Bankr. D.N.J. 2011) ("[The unsworn declaration] reads, 'I. Mark McGuire, pursuant to 28 U.S.C. § 1746, hereby verify the foregoing statements are true and correct to the best of my knowledge and belief.' This verification is not made under penalty of perjury and does not meet the requirements of the statute. Thus, Mr. McGuire's motion to vacate default is not supported by any proper evidence.").

26.  Defendant Dominique's Motions are improper because Defendant Dominique has again failed to comply with the Court's earlier Orders to include his current mailing address, email address, and telephone number with his filing.  (Nov. 14, 2014, Order.)

27. The Court, after the withdrawal of Defendant Dominique's attorney, twice ordered Defendant Dominique to state the name and address of his new attorney or to notify the Court that he intended to proceed pro se. (Oct. 22, 2014 Order; Nov. 14, 2014, Order.)  The latter of those two Orders gave Defendant Dominique fourteen days to respond. (Nov. 14, 2014 Order.)  Defendant Dominique failed to do so until nearly two months later. (See Docket.)

28. Defendant Dominique's failure to provide his mailing address and telephone number are independent reasons to uphold the default judgment against him.  The Local Rules state:

> **Failure to Update Office Address and Number**. The failure of counsel for a party or of a party appearing pro se to keep the clerk's office informed of any change in address and/or

telephone number which causes a delay or otherwise adversely affects the management of the case shall constitute grounds either for dismissal of the action without prejudice or for entry of a default judgment.

N.D. Ga. R. 41.2(C) (emphasis in original).

29. Additionally, Defendant Dominique has not, at this point, filed a motion to set aside the default judgment pursuant to Federal Rule of Civil Procedure 55(c) and 60(b). Fed. R. Civ. Pr. 55(c), 60(b).

30. Even if the Court were to construe one of Defendant Dominique's Motions as a Motion to Set Aside Default Judgment, the Court would deny such a Motion. Defendant Dominique is not able to satisfy even the easier test for setting aside an entry of default as he has not acted promptly to correct the default, has recklessly disregarded

33

judicial proceedings (see e.g., Docket Entry No.103), and setting aside the default would greatly prejudice Plaintiff, who has expended significant time and resources in litigating this case to this point and has clearly been greatly harmed by Defendant Dominique.   Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion, 88 F.3d 948, 951 (11th Cir. 1996) (discussing that when courts consider granting relief from default they often consider factors such as whether the defaulting party presented a meritorious defense, whether the defaulting party acted promptly to correct the default, whether the defaulting party displayed a reckless disregard for judicial proceedings, or whether setting aside the default would prejudice the opposing party); E.E.O.C. v. Mike Smith

34

Pontiac GMC, Inc., 896 F.2d 524, 528 (11th Cir. 1990) (finding that Rule 55(c)'s "good cause" requirement establishes a lower threshold to obtain relief from the entry of default than that required under Federal Rule of Civil Procedure 60(b) to set aside a default judgment).

31. Based on the foregoing reasons, the Court concludes that Defendant Dominique's Motions should be dismissed with prejudice.

## E.   Plaintiff's Attorney's Fees

32. Plaintiff seeks an award of attorney's fees in the amount of $41,022.00, plus additional fees for the time spent for the hearings before the Court on January 9 and 12, 2014.

AO 72A

33. "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." <u>Loranger v. Stierheim</u>, 10 F.3d 776, 781 (11th Cir. 1994). "This 'lodestar' may then be adjusted for the results obtained." <u>Id.</u> The Supreme Court, however, has cautioned that "there is a 'strong presumption' that the lodestar figure is reasonable." <u>Perdue v. Kenny A. ex rel. Winn</u>, 559 U.S. 542, 554 (2010). "[T]hat presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." <u>Id.</u> "[T]hese circumstances are indeed 'rare' and 'exceptional,' and require specific evidence that the lodestar fee would not

36

have been 'adequate to attract competent counsel.'" <u>Id.</u> (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 897 (1984)).

34. Although the Court has wide discretion in determining an award of attorney's fees, the Court "must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." <u>Loranger</u>, 10 F.3d at 781 (internal quotation marks and citations omitted).

35. Plaintiff, as the fee applicant, bears "'the burden of establishing entitlement and documenting the appropriate hours and hourly rates.'" <u>ACLU of Ga. v. Barnes</u>, 168 F.3d 423, 427 (11th Cir. 1999) (quoting <u>Norman v. Hous. Auth. of City of Montgomery</u>, 836 F.2d 1292, 1304 (11th Cir. 1988)).

### 1.   Reasonable Hourly Rate

36.   "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable   skills, experience, and reputation." Norman, 836 F.2d at 1299.  "The party seeking attorney's fees bears the burden of producing 'satisfactory evidence that the requested rate is in line with prevailing market rates.'" Loranger, 10 F.3d at 781 (quoting Norman, 836 F.2d at 1299).[8] "A court, however, 'is itself an expert on

---

[8]Satisfactory evidence requires "'more than the affidavit of the attorney performing the work.'" Loranger, 10 F.3d at 781 (quoting Norman, 836 F.2d at 1299).  Additionally, "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." Norman, 836 F.2d at 1299.  "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." Id.  Opinion evidence, however, should include "testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." Id.

38

the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment. . . ." Id. (quoting Norman, 836 F.2d at 1303).

37. Generally, the "relevant legal community," for purposes of determining prevailing market rates, "is that of the place where the case is filed." Cullens v. Ga Dep't of Transp., 29 F.3d 1489, 1494 (11th Cir. 1994).[9]  The Court, however, may "consider a different legal market if it appears unlikely that there would be any attorneys in the local market who would be willing to take the case and who would possess sufficient expertise in the area of law involved."

---

[9]In this instance, the case was filed in Atlanta, Georgia, but the proceedings took place in Rome, Georgia, a different legal market.

AO 72A

<u>Gay Lesbian Bisexual Alliance v. Sessions</u>, 930 F. Supp. 1492, 1495 (M.D. Ala. June 6, 1996).

38.   Plaintiff filed this case in the Atlanta Division of the United States District Court for the Northern District of Georgia.  The Atlanta, Georgia legal market consequently is the relevant legal market for determining a reasonable hourly rate.

39. Based on the Court's own experience and knowledge, the Court finds that the prevailing hourly rates in the Atlanta, Georgia legal market for services provided by legal professionals in similar actions for attorneys with similar legal experience as Attorney Finch is $225.00.[10]

---

[10]As there is little evidence in the record as to the reasonableness of the rate for Attorney Russell, the Court applies the same rate of $225.00 to his 2.5 hours and, for the sake of simplicity, includes it with the attorney's fees for Attorney Finch

## 2.   Reasonable Number of Compensable Hours

40. In determining the number of hours reasonably expended on a case, courts must review each attorney's "billing judgment" to eliminate "'excessive, redundant, or otherwise unnecessary' hours." Norman, 836 F.2d at 1301 (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). "[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights." Id.

41. The party seeking an award of attorney's fees has the burden of introducing evidence to establish the number of hours spent litigating the case. The Court then has the discretion to reduce the number of compensable hours to

---

when calculating the total amount of attorney's fees awarded.

reflect excessive or unnecessary work on given tasks. Norman, 836 F.2d at 1301. The Court, however, "should identify the hours disallowed and explain why they are disallowed." Loranger, 10 F.3d at 783.

42. Plaintiff's request includes billing entries for:

1. 1.5 hours researching and drafting a Motion for Temporary Restraining Order
2. 3 hours drafting Ex Parte Motion for Temporary Restraining Order
3. 1 hour filing Ex Parte Motion for Temporary Restraining Order
4. 1.5 hours drafting Amended Ex Parte Motion for Temporary Restraining Order
5. 1 hour filing Amended Ex Parte Motion for Temporary Restraining Order
6. 4 hours drafting Motion for Contempt
7. 3 hours drafting Motion to Strike Motion to Change Venue
8. 3 hours drafting Response to Motion to Dismiss
9. 2 hours drafting Response to Motion to Change Venue
10. 1 hour filing Motions and Responses

AO 72A

(Pl. Ex. 8.)   The Court finds that these tasks were either excessive or unnecessary (see Docket) and will not permit Plaintiff to recover attorney's fees for this time spent.   The Court therefore reduce the number of billable hours by twenty-one hours.

43.   "It is well established that '[t]he fee applicant bears the burden of demonstrating, through proper documentation, that an appropriate amount of time was expended at an appropriate hourly rate.'" Mr. and Mrs. B. v. Weston Bd. of Educ., 34 F. Supp. 2d 777, 781 (D. Conn. Jan. 1, 1999) (alteration in original) (quoting Patrick G. v. Chicago Sch. Dist. No. 299, No. 94 C 3417, 1994 WL 715590, at *1 (N.D. Ill. Dec. 20, 1994), aff'd, 69 F.3d 540 (7th Cir. 1995)). "Applications for attorney's fees 'must be accompanied by

43

contemporaneous time records that specify for each attorney, the date, hours expended, and nature of the work done.'" Id. (quoting N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983)).

44. Attorneys can recover fees only for entries that "identify the general subject matter of [time] expenditures." Hensley, 461 U.S. at 437 n.12. "Entries stating such vague references as 'review of file', 'review of correspondence', 'research', 'conference with client', and 'preparation of brief' do not provide an adequate basis upon which to evaluate the reasonableness of the services and hours expended on a given matter." Mr. and Mrs. B., 34 F. Supp. 2d at 781. "In order to survive a dispute about the sufficiency of time

AO 72A

entries, the time records should include a reference line to describe adequately the subject of the work performed." Id.

45. "[I]n determining reasonable hours, the district court must deduct time spent on discrete and unsuccessful claims." Norman, 836 F.2d at 1302.   Where, however, the claims for relief involve a common core of facts or are based on related legal theories, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Hensley, 461 U.S. at 435.

46.  The Court finds Attorney Finch is also entitled to bill three and a half hours for the January 9, 2015, hearing and three and a half hours for the January 12, 2015, hearing.

45

47.   Attorney Finch twice, excluding hours already excluded by the Court, billed one hour for filing documents with the Court. (Pl. Ex. 8.)   Such an amount of time is excessive and the Court reduces each of those by half.

48.   Under Mr. and Mrs. B., Plaintiff also may not recover for one hour for "Consultation with Client."   The Court reduces that amount by half.

49.   Attorney Finch billed a total of two hours for obtaining a Clerk-issued summons for Defendant Dominique.  The Court finds that amount is excessive and reduces it by half.

50.   In sum, the Court will permit Plaintiff to recover for a total of 90.6 hours billed by Plaintiff's counsel.

46

51.  After the adjustments to hourly rates and number of hours recoverable discussed above, the lodestar amount is $20,385, representing payment for 90.6 hours of work at a rate of $225.00 per hour.

52.  The Court concludes that Plaintiff may also recover $610.00 for costs and expenses that were reasonable and necessary for this case.  (Pl. Ex. 8.)

## V.   Conclusion

ACCORDINGLY, the Court awards damages to Plaintiff and against Defendant Dominique as follows: (1) as to Count II of Plaintiff's Seconded Amended Complaint in the amount of $40,000.00; (2) as to intentional infliction of emotional distress in the amount of $60,000.00; and (3) attorney's fees in the amount of $20,385.00 and costs in the

47

amount of $610.00.  The Court **DIRECTS** the Clerk to enter judgment accordingly.  The Court **ORDERS** that Defendant Dominique shall be and hereby is **PERMANENTLY ENJOINED** and restrained from posting untrue, derogatory statements about Plaintiff on the internet or other public forum.  The Court **DISMISSES** Plaintiff's remaining claims. The Court **DENIES WITH PREJUDICE** Defendant Dominique's Motion to Dismiss [105], Motion for Sanctions [106], and Motion for Production of Phone Records [107]. Because this Order resolves all of Plaintiff's claims, the Court **DIRECTS** the Clerk to **CLOSE** the case.

AO 72A

IT IS SO ORDERED, this the 20 day of January, 2015.


_____

UNITED STATES DISTRICT JUDGE

AO 72A